1

2

3

4

5

6

7       **IN THE UNITED STATES DISTRICT COURT**

8        **FOR THE DISTRICT OF ARIZONA**

9
Kingsley Capital Management, LLC;  Bruce        No. CV-10-02243-PHX-NVW
10   Paine Kingsley MD IRA Rollover,
                                                **ORDER**
11                     Plaintiffs,

12   v.

13   Brian Nelson Sly; Brian Sly and Company
     Incorporated;  Brian Sly and Company;
14   Wilbur Anthony Huff; Sherri Huff; Charles
     J. Antonucci; Thomas J. Bean; Thomas
15   Cunningham; Heather D. Cunningham;
     Accredited Investor Resources, LLC,
16
                       Defendants.
17

18

19

20         Before the Court is Plaintiffs' Motion for a New Trial and or Motion to Alter or

21   Amend Judgment (Doc. 500).  In two sequential verdicts the jury found liability but no

22   damages.  After direct inquiry whether anything more was sought from the jury, Plaintiffs

23   considered it for ten minutes and then declined.  The jury was then discharged without

24   further deliberations.  Plaintiffs now move for amendment of the judgment to award

25   damages in the amount of $1,227,916.00 or in the alternative for new trial on damages,

26   but not liability, with a new jury.  Plaintiffs waived any error in the verdict of no damages

27   by not requesting further deliberations.  Plaintiffs' Motion will be denied.

28

I.      **LEGAL STANDARD**

A motion for new trial may be granted after a "jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a).  A new trial is properly granted "only if the verdict is contrary to the clear weight of evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).  The trial judge must be "left with the definite and firm conviction that a mistake has been committed" by the jury.  *Landes Const. Co., Inc. v. Royal Bank of Canada*, 833 F. 2d 1365, 1371-72 (9th Cir. 1987).

II.     **PROCEDURAL HISTORY AND UNDISPUTED EVIDENCE**

1.      Dr. Bruce Kingsley's individual retirement account and his company Kingsley Capital Management, LLC, brought this securities fraud action against Brian Sly, Brian Sly & Company, and others. The Sly Defendants were the only defendants at the trial.  Dr. Kingsley alleged Sly violated Arizona securities law and common law when Sly promoted to him an investment in Accredited Investor Resources, LLC, without disclosing certain information.   Dr. Kingsley, his accountant, and his lawyers diligently investigated the investment on their own for several months, and Dr. Kingsley was warned off by his accountant.  He invested $1,750,000.00 on an expectation of 30% annual return, 20% nominal return plus 10% for consulting services.

It turned out the manager of the company, Anthony Huff, with whom Dr. Kingsley dealt directly for months after Sly's introduction, misrepresented the affairs of the company and stole large amounts of company monies, including Dr. Kingsley's $1,750,000.00 the day after it was paid in.   The company is now defunct, and all investors lost essentially everything, including Brian Sly, the largest investor at $3,000,000.00, and Sly's mother.  A number of people involved are now in prison, and criminal proceedings are pending against Anthony Huff.

It also turned out that Dr. Kingsley did not put his money in the same investment

Sly had promoted to him or that any of the other members of the company invested in. He bought a membership in Accredited Investor Resources, LLC, but in economic substance it was an entirely different investment from theirs.  For the other investors, the rosy contract rights to repayments were dependent on the fortunes of the company and its ability to repay them.  By his own testimony, Dr. Kingsley only invested because he got a special deal from Anthony Huff and the company, kept secret from all other members, which left him with no risk in his investment.  Huff gave Dr. Kingsley a right within five years to force resale of his interest to one of Huff's companies for the unrepaid balance of his purchase price.  Of far more importance, the put option was backed by a standby letter of credit from Park Avenue Bank in New York, which had to pay upon presentation of Dr. Kingsley's demand to repurchase and Huff's company's failure to pay.  To use a colorful phrase from the trial, Huff agreed to be "the equity shock-absorber," but only for Dr. Kingsley.

So Dr. Kingsley was the only investor who was not dependent on the fortunes of the company for return of any of his investment, and he could wait up to five years to reclaim his money from Huff and the bank.  He had no downside risk in common with the other members; his only risk was the tiny one that the bank might fail.  He could pretend to be in the boat and row in time with the true investors, but if the boat foundered, he could helicopter himself out and leave the others to their watery fate.  The grist of this lawsuit, Sly's description made months before of his own investment in Accredited Investor Resources, LLC, could not have been material to Dr. Kingsley's decision to invest in an essentially unconditional bank obligation independent from the fortunes of the company.   Though Dr. Kingsley denies lack of materiality of Sly's statements, he admits it in fact when he says he only invested because of the put option backed by the bank letter of credit.

The rest of the story is that Anthony Huff bribed officers of Park Avenue Bank to issue Dr. Kingsley's standby letter of credit.  One bank officer is in prison and another has criminal proceedings pending against him.  The bank did fail and could not honor the

letter of credit.  As Dr. Kingsley told Sly before suing him, Brian Sly is the only person left in the story with real money.

2.      With the benefit of full exposition in three weeks of trial, the Court was disposed to grant Sly's motion for judgment as a matter of law against the securities claim.  A membership in Accredited Investor Resources, LLC, was not a security because the operating agreement granted managerial powers to all members and "plaintiff was not so inexperienced and unknowledgeable in this business that he was incapable of exercising meaningful power, nor was he so dependent on unique entrepreneurial managerial ability of the manager that the manager cannot be replaced, or the member, the plaintiff, could not exercise his meaningful power as a member."   (Doc. 530, Pgs. 159).  *Nutek Info. Sys., Inc. v. Ariz. Corp. Comm'n*, 194 Ariz. 104, 109 ¶ 20, 977 P.2d 826, 831 (Ariz. App. 1998) (stating factors for whether a general partnership interest constitutes an investment contract or a security and citing *Williamson v. Tucker*, 645 F.2d 404, 424 (5th Cir. 1981)).

However, granting judgment for Sly against the securities claim then would have had little benefit.  The trial would continue and the jury would have to deliberate on the non-securities claims anyway.  The Advisory Committee Note to Rule 50(b) counsels the wisdom of reserving the motion for post-verdict decision.  "[A] preverdict ruling gambles that a reversal may result in a new trial that might have been avoided.  For these reasons, the court may often wisely decline to rule on a motion for judgment as a matter of law made at the close of the evidence" and reserve ruling until after the verdict.  Fed. R. Civ. P. 50 cmt. subdiv. (b) (1991).  If the verdict goes the same way as the court's ruling would, appellate review is under the more deferential standard for jury verdicts than for judgments as a matter of law.

The Court therefore resolved to send the securities claim to verdict with the other claims and get independent fact-finding based largely on Dr. Kingsley's requested instructions and interrogatories, knowing that it would grant judgment as a matter of law on the securities claim after the verdict in any event.  If the verdict was then against Dr.

1   Kingsley, it would eliminate further dispute about what instructions and interrogatories
2   should have been given.

3           3.      The case was tried to a jury for nine days in October 2013.  Because the
4   parties insisted on instructing the jury on six different measures of damages for six
5   theories of liability, to reduce jury confusion the Court decided late in the trial to
6   bifurcate liability and damage deliberations.  The instruction on the Arizona Securities
7   Act claim was taken verbatim from the statutes and the Arizona case of *Nutek Info. Sys.,*
8   *Inc.*, 194 Ariz. 104, 977 P.2d 826 (Ariz. App. 1998).  Indeed, the jury asked for
9   clarification of what is a security, but upon Dr. Kingsley's objection, the Court declined
10  to do so.  (Doc. 529, Pgs. 61-67).  The jury found for Sly on five claims but for Dr.
11  Kingsley on the Arizona Securities Act claim under A.R.S. § 44-1991(A)(2).  (Doc. 485).
12  That required finding that Sly made some "untrue statement of material fact, or omit[ed]
13  to state [a] material fact necessary in order to make the statements made, in the light of
14  the circumstances under which they were made, not misleading."  (Doc. 485).

15          The jury was then instructed on damages and directed to answer a number of
16  contingent interrogatories in the supplemental verdict.  (Doc. 491).  Pursuant to Arizona
17  statute and upon Dr. Kingsley's demand, the jury was instructed to apportion fault among
18  Sly and the four other defendants, none of whom were at trial, though the trial never
19  addressed their degrees of fault.  (Doc. 491; Doc. 530 Pgs. 5-8).  The jury sent out a
20  question concerning what it had to find to avoid having to answer the interrogatories
21  about apportionment of fault.  (Doc. 492).

22          In its supplemental verdict, the jury found that Sly proved "by a preponderance of
23  the evidence that [some] or all of the amount recoverable by the Plaintiffs under
24  subsection (A)(2) was not caused by Defendants' untrue statement of fact or omission of
25  any material fact but was, instead, caused by some other action or event."  (Doc. 493).
26  The jury also found that Dr. Kingsley proved "by a preponderance of the evidence that
27  Defendant's activities constituted dishonest or unethical practices in the securities
28  industry" and that Sly violated A.R.S. § 44-11991(A)(2) recklessly and knowingly.

(Doc. 493).  The jury had asked whether the latter finding would free it from having to apportion fault and was told it would.  The findings rendered Sly liable for all of Dr. Kingsley's investment losses under Arizona securities law, A.R.S. § 44-2003.  But the jury then awarded $0 in damages.  (Doc. 493).

4.      After the supplemental verdict on damages was read, the Court asked the jury to return to the jury room so counsel could be consulted.  (Doc. 530, Pg. 106).  The following dialogue then took place:

> THE COURT: Counsel, before I discharge the jury I thought I should give you both a chance to think about this, ask you if anyone thinks there's anything further we need to do with this jury.  And I give you a moment to reflect and confer with your clients.
>
> I'm not suggesting there is anything we need to do, but once we discharge them they are gone.  So I give you a moment to think about the verdict.
>
> MR. CONANT [Counsel for Plaintiffs]:  Your Honor, do you mind if I step out of the courtroom with Mr. Murphy and discuss it with him?
>
> COURT:  Certainly.
>
> (Recess from 2:37 p.m. until 2:47 p.m.)
>
> THE COURT:  Okay.  All right.  The record will show counsel and the parties have returned.
>
> Anything either one wants to bring up before I discharge the jury?
>
> MR. BERNHARD [Counsel for Defendants]: Defendants have nothing further of [sic] the jury, Your Honor.  Thank you.
>
> THE COURT:  Mr. Conant.
>
> MR. CONANT:  Plaintiffs don't have any other questions for the jury.
>
> THE COURT:  All right.  Very well then.  Nick, let's bring them back in.

1
2          There's been enough complexity in this trial I just thought I should
3      give you a chance to think about that before we let them go.

4  (Doc. 530, Pgs. 106-07).

5          With hindsight, and even some overridden foresight, the instructions and
6  interrogatories on the securities claim may have been confusing.  The jury's questions
7  evidenced that. The jury's earlier request for clarification of the definition of a security
8  could have been answered for further deliberations.  The interrogatory on apportionment
9  of fault could have been changed to ask only for Sly's degree of fault and the other four
10  person's degrees of fault collectively, without specific degrees of fault for each.  The
11  Court had suggested this originally, but Dr. Kingsley objected.  (Doc. 529, Pgs. 10-19).

12          Further deliberations even without clarifications could well have resulted in
13  revisiting the liability verdict and finding no liability instead.  And if somehow the jury
14  could be directed to reconsider its damage verdict alone but restrained against
15  reconsidering its liability verdict, the jury could well have answered questions in ways
16  that triggered comparative fault and then allocated fault entirely to the other persons,
17  especially Anthony Huff.  That would leave the same result of no damages against Sly.
18  The jury may have already done that in substance, but answered some interrogatories in a
19  way to avoid the bootless exercise of deciding exactly how much fault each of the other
20  four persons had.

21          Rather than risk any of these likely outcomes from further deliberations by this
22  jury, Dr. Kingsley let the jury be discharged.

23          After the jury was discharged, the Court granted the reserved motion for judgment
24  as a matter of law on the securities claim as a supplement to the jury's verdicts ultimately
25  for Sly.  (Doc. 489).  Among other things, the Court found no security and no materiality
26  to the alleged misrepresentations about Dr. Kingsley's unique investment.

27          /
28          /

- 7 -

Dr. Kingsley now moves to alter or amend the judgment to award damages of $1,227,916.00 or in the alternative for new trial. (Doc. 500). He argues that the no damage verdict and the liability verdict are incompatible, so he either gets his money now or he gets to take his chances with a fresh jury that is already constrained to find liability. If the Court thought this meritorious, the Motion would still have to be denied based on the post-verdict grant of judgment as a matter of law against the securities claim. The Court alternatively addresses the Motion and denies it on its own merits.

## III. DR. KINGSLEY WAIVED OBJECTION TO THE VERDICT BY NOT REQUESTING FURTHER JURY DELIBERATIONS

Objections to a verdict for inconsistency, even if correct, are waived if not made before the jury is discharged. *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1331 (9th Cir. 1995) ("When counsel is invited to consider whether or not to discharge the jury, counsel risks waiver of objections to any inconsistencies in the jury's findings if counsel does not raise the issue before the jury is excused"). Specifically, "motions for a new trial challenging a zero damages award as inconsistent with liability are waived when either: 1) a jury verdict finds liability but no damages and the moving party does not object before jury discharge; or, more generally, (2) the moving party argues that the jury has rendered a verdict that contains two legal conclusions that are inconsistent with one another, and the moving party does not object before jury discharge." *Kode v. Carlson*, 596 F.3d 608, 611 (9th Cir. 2010) (citing *Phillippine Nat. Oil Co. v. Garrett Corp*, 724 F.2d 803, 806-07 (9th Cir. 1984)); *see also Joseph v. Rowlen*, 425 F.2d 1010, 1011-13 (7th Cir. 1970) (requiring a party to object to a jury finding of liability but no damages).

Dr. Kingsley says *Hazle v. Crofoot*, 727 F.3d 983, 988-90 (9th Cir. 2013), excuses him from this rule. *Hazle* is different because there the jury did not return an inconsistent verdict on liability and damages. *Id*. at 989. *Hazle* was a damage-only trial, the court having previously found liability on summary judgment. The jury returned a verdict of $0 in damages. *Id*. at 989. The Ninth Circuit clarified that a party is only required to

object to the verdict when "the verdict is 'internally inconsistent'—as when, for example, the jury decides *both* the issues of liability *and* damages, and does so inconsistently." *Id*. at 991.  The jury decided both liability and damages in this case, so the general rule applies requiring objection and request for further deliberation.

Dr. Kingsley also contends the two verdicts are not really inconsistent.  His thesis that they were consistent but in error is difficult to grasp, and in any event it is incorrect.  Dr. Kingsley's briefing on the consistency of the verdicts disregards established law.  By the force of his own argument, this is exactly the type of inconsistent verdict that would require request for further deliberation before the jury is discharged.  *See Kode*, 596 F.3d at 611.  Moreover, a plaintiff must object to a verdict of liability but no damages even if the jury's responses to the interrogatories are consistent with the general verdict.  *Philippine Nat. Oil Co.*, 724 F.2d at 806.  By not requesting further deliberation before the jury was discharged, Dr. Kingsley waived the error he now asserts.

Two problems in the instructions and interrogatories, previously noted, could have been and probably would have been clarified upon any further deliberations.  They are the points about which the jury had asked questions.  The Court likely would have answered the jury's earlier request for clarification of the definition of "security," which was abstract and prolix.  (Doc. 484, Pg. 6).

Additionally, although required by Arizona statute, A.R.S. § 44-2003(D), the conditional requirement to allocate fault among five persons imposed a difficult task that was pointless in the circumstances of this case.  During deliberations, the jury asked whether, if they answered that Sly had violated A.R.S. § 44-1991(A)(2) recklessly or knowingly, that made Sly 100% liable for damages and eliminated the need to apportion fault among the remaining defendants.  (Doc. 492).  The jury may have been swayed to give answers that avoided those interrogatories but still reached a result of no damages against Sly.   The Court had expressed reluctance about giving this burdensome interrogatory but did so because Dr. Kingsley demanded it.  In light of the Court's previous concerns and the jury's question, if the jury had been sent back for further

deliberations, the Court would have simplified this interrogatory to ask only for Sly's degree of fault and that of all the other defendants collectively.

This Motion dramatically illustrates the abuse that is prevented by the requirement to request further jury deliberations.  Any inconsistency in the verdicts might have been reconciled by revising, in favor of Sly, the liability verdict or the answers to the damage interrogatories.  The Motion ignores that.  Dr. Kingsley had good reason to fear that, as this jury had found against him on every claim, one way or another.  If this jury's work was unfinished, Dr. Kingsley could not discard them to get a different jury and better chances.

## IV.    THE MOTION TO ALTER OR AMEND JUDGMENT

Post-verdict alteration or modification of the judgment is appropriate only if "(1) the district court is presented with newly discovered evidence, (2) the district court committed clear error or made an initial decision that was manifestly unjust, or (3) there is an intervening change in controlling law." *Zimmerman v. City of Oakland,* 255 F.3d 734, 740 (9th Cir. 2001).

Dr. Kingsley's alternative Motion to Alter or Amend Judgment to award $1,227,916.00 is in substance a motion for judgment notwithstanding the verdict—now renamed a motion for judgment as a matter of law.  Such a motion may not be made after verdict unless it was first made before verdict.  Fed. R. Civ. P. Rule 50(b); *see, e.g.*, *Zhang v. Am. Gem Seafood, Inc.*, 339 F.3d 1020, 1028 (9th Cir. 2003) (noting that "[t]he failure to raise the issue prior to the return of the verdict results in a complete waiver" of the right to bring a post-verdict motion for judgment as a matter of law); *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 887 (9th Cir. 2002) (holding that a motion for judgment as a matter of law must be made at the close of all evidence to preserve the right to bring the same motion after verdict).  After the verdict of liability and before the jury retired to decide damages, Dr. Kingsley did not move for judgment as a matter of law on damages in any amount, even the lesser amount he now argues is due as a matter of law.

In any event, the alternative Motion to Alter or Amend Judgment must be denied

for the same reasons as the Motion for New Trial.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for New Trial and or Motion to Alter or Amend Judgment (Doc. 500) is denied.

Dated this 17th day of January, 2014.

Neil V. Wake
United States District Judge